**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 11 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-30716 |
| | ) | |
| David B. Ross, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 14] and Debtor's response [Doc. #17]. The court held a hearing on the motion that Debtor, his counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless he converts the case to Chapter 13.

## BACKGROUND

Debtor is 46 years old and is employed at JM Smucker Company, where he has worked for approximately 26 years. He is single with two dependent sons, ages fourteen and seventeen. Debtors' sons do not live with him. Although he sees them regularly, because of sports and school activities, they do not visit at his home very often. He testified at his first meeting of creditors that his sons had visited in his home only once during the previous four months.

Debtor and his girlfriend, Lori Ryan, who also works at JM Smucker Company, live in a mobile home that Ryan owns free and clear, except for delinquent real estate taxes.[1] They have shared the same home and living expenses for the past eight years.

On March 10, 2014, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that his debts are primarily consumer debts. Debtor's bankruptcy schedules show no unsecured priority debt and total unsecured nonpriority debt in the amount of $12,635.83. [UST Ex. 2, pp. 14-19]. Debtor's schedules also show a mortgage debt of $11,500 owed jointly with Ryan on a Las Vegas time share. [*Id.* at 13 & 21]. The time share debt is the only joint debt owed with Ryan, and both Debtor and Ryan have stated intentions to surrender that property.

Debtor's Schedule I shows monthly income after payroll deductions in the amount of $2,541.44. [*Id.* at pp. 22-23]. His payroll deductions include $805 for child support. Debtor anticipates this amount decreasing by half in June 2015 when his oldest son graduates from high school. Although not included as a deduction from income on his Schedule I, Debtor has been making, and continues to make, biweekly contributions to his 401(k) plans in the amount of approximately $150. [*See* UST Ex. 3].

Debtor's Schedule J shows total monthly expenses in the amount of $2,994. [*Id.* at pp. 24-25]. This amount excludes an $800 monthly contribution to household expenses that he pays to Ryan but includes a water expense of $50 that is paid by Ryan and a rent expense of $600 and electrical expense of $200, neither of which are actually paid by him but, according to Debtor, were included to represent his $800 monthly contribution. Debtor's monthly expenses also include, among other things, $300 for cell phones for him and Ryan, $100 for cable television, $600 for food, $155 for clothing, laundry and dry cleaning, and $400

---

[1] Ryan is a debtor in a separately filed Chapter 7 case. [Case No. 14-30715]. The UST also filed a motion to dismiss for abuse under § 707(b)(1) and (3) in that case that was set for hearing on the same date as the hearing in this case. Because of the shared living arrangement and shared expenses that results in testimony and evidence relevant to both cases, the parties agreed to present one evidentiary record for both cases. The testimony at the hearing shows that Debtors function and have long functioned as one household and an economic unit.

for transportation.

Other household expenses paid by Ryan that are not included on Debtor's Schedule J include car payments for two vehicles, one of which is driven by Debtor, utility expenses, an additional food expense of $400, for a total household expense for food of $1,000, and an additional $300 for transportation, for a total household expense of $700 for transportation. The court notes that Debtor and Ryan both work at the same location, and Ryan testified that she and Debtor ride to work together during the winter. Adjusting Debtor's Schedule J expenses to exclude only the $50 water expense paid by Ryan, Debtor's monthly expenses total $2,944. With no other adjustments, Debtor has a monthly budget deficit of $403.

However, in addition to Debtor's monthly income reported on Schedule I, he testified that he generally receives an income tax refund and, in 2014, received a refund in the amount $3,206. In Debtor's prior Chapter 13 case, Debtor's plan was modified to require a $155 per month plan payment due to his failure to turn over his 2009 tax refund in the amount of $4,342.00. [*See* UST Exs. 7 & 8]. After having made all of his plan payments, Debtor's case was ultimately dismissed approximately one month before his Chapter 7 case was filed due to his failure to submit to the trustee income tax refunds for 2011 and 2012 in the amounts of $3,172.00 and $2,672.01, respectively. [*See* UST Exs. 9, 10 & 11].

According to Debtor's Form B22A means test calculation,[2] he has above median income and no presumption of abuse arose under 11 U.S.C. § 707(b)(2). The UST filed a motion to dismiss for abuse and is proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In*

---

[2]Effective December 1, 2014, Official Form B22A was changed. For cases filed on or after December 1, 2014, the Chapter 7 means test calculation would be set forth on new Official Forms B22A-1, B22A-1Supp, and B22A-2. Debtor's means test calculation is presented on Official Form B22A as in effect when he filed his petition. Fed. R. Bankr. P. 9009.

3

*re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtor's case should be dismissed. *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

At the hearing in this case, the UST withdrew that portion of his motion seeking dismissal with prejudice for filing in bad faith and argued only that the totality of Debtor's financial circumstances demonstrates that he is not needy and that granting him a discharge would be an abuse of the provisions of Chapter 7. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. at 855-56.

Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

In this case, Debtor has a stable source of above median income, having been employed at the same job for approximately 26 years. There is no indication that Debtor anticipates a material decrease in his income in the next five years. And Debtor's unsecured debts are less than the limits for eligibility for relief

4

under Chapter 13. *See* 11 U.S.C. § 109(e). The UST contends that Debtor is able to fund a Chapter 13 plan and pay a significant amount of his unsecured debt.

In assessing Debtor's ability to pay, the court considers the fact that Debtor received an income tax refund in 2014 in the amount of $3,206 and has regularly received significant income tax refunds of between $2,672 and $4,342. Although not available on a monthly basis, because income tax refunds arise as the result of a taxpayer's overpayment of his tax liability or over-withholding from his pay, they are a source of income for a debtor and are included in a determination of Debtor's ability to pay unsecured creditors. *In re Jacob*, 447 B.R. 535, 543 (Bankr. N.D. Ohio 2010); *In re Edighoffer*, 375 B.R. 789, 797 (Bankr. N.D. Ohio 2007); *In re Fox*, 521 B.R. 520, 529-30 (Bankr. D. Md. 2014) (citing cases). There being no reason to believe Debtor will not continue receiving similar refunds in the future, considering a typical refund of only $3,000 equates to $250 per month of over-withholding that could be used to pay creditors.

Although with this adjustment to Debtor's income his monthly budget deficit is still approximately $150, the court believes Debtor's household expenses could be reduced without depriving him or his dependents of adequate food, clothing, shelter or other necessities such that a meaningful payment to creditors can be made. Specifically, the court finds Debtor's monthly allocation of $600 for food, for a total household monthly food expense of $1000, to be excessive. Other expenses the court believes could be trimmed include Debtor's transportation expense of $400, especially since he and Ryan work at the same place and even ride to work together during the winter, his $300 cell phone expense, $100 cable television expense, and $155 clothing expense. "[W]hile bankruptcy relief is not conditioned upon a debtor living in poverty, it does envision a sacrifice on the part of the debtor." *In re Felske*, 385 B.R. 649, 656 (Bankr. N.D. Ohio 2008).

Moreover, Debtor anticipates his income after payroll deductions to increase by approximately $400 when his child support obligation is reduced after his oldest son's graduation from high school this year. To the extent this occurs, and even without any adjustments to household expenses, Debtor will have a monthly budget surplus of approximately $250. *See Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 476-77 (6th Cir. 2010) (stating that future changes in expenses known to be incurred may be considered in determining projected disposable income under Chapter 13). In the end, the court agrees that it need not know with certainty what amount Debtor has or will have as a monthly budget surplus since, in light of the foregoing, the court is confident that he has the ability to make a meaningful repayment of his unsecured debt. *In re Edighoffer*, 375 B.R. at 799. The court's conclusion is buttressed by the fact that he successfully

made monthly payments of $155 during his recent Chapter 13 case. The court is aware of no changed circumstances that would now make such a payment impossible. Applying only $155 per month to repay unsecured creditors over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), Debtor would have approximately $9,300, or $8,538 after payment of the Chapter 13 Trustee's administrative expenses, available to pay his unsecured nonpriority debt. Under this scenario, unsecured creditors may potentially receive a dividend of approximately 68%, or more if claims are not filed by all creditors as frequently occurs. *See In re Behlke*, 338 F.3d at 437 (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors).

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtor's financial problems.

In conclusion, the court finds that Debtor has reasonably stable income and is able to pay a meaningful portion of his unsecured debts out of his future income without Debtor or his dependents being deprived of adequate housing, food, clothing, or other necessities and that granting Debtor relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of their financial circumstances.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #14] will be granted, and this case will be dismissed, by separate order of the court, without further notice or opportunity for hearing.

###